The opinion of the Court was delivered by
Wilde J.
In the determination of this cause several points are to be considered. The first relates to the construction of the will. The question as to this point is, whether Alice Simpson took a life estate with a power to sell depending on a contingency, or an estate in fee. Several cases were cited by the counsel for the tenants to show, that on a devise of land to a person for life, with power to dispose thereof at his will and pleasure on the happening of a contingency, the devisee will take a fee on the happening of such contingency, or will -take a fee subject to be defeated by the failure of such contingency. It was so decided in the case of Goodtitle v. Otway, 2 Wils. 6, and in the cases cited from Leonard, Levinz, and Johnson's Cases. We are not disposed at all to question the law as laid down in these cases, but we are all of opinion that the principle on which they depend is not in this case applicable It is plain, I think, that it was not the intention of the devisor to empower his widow to dispose of the premises, unless she should stand in need, and such disposition should become necessary for her comfortable support. Her power to sell depended on this contingency ; if it never happened, then she had only a life estate, by the express word» of the will. This therefore is not a devise with power to the devisee in any event to sell at her will and pleasure, but the power depends cn a particular contingency.
*333 It has been argued that the devisee shall take a fee, because the estate is charged with the payment of debts ; but the distinction is, that where the charge is on the person of the devisee, a fee will pass without words of limitation, because otherwise he might be a sufferer, but where the charge is on the land, or to be payable out of the rents and profits, the devisee takes only an estate for life. In the case of Dickins v. Marshall, Cro. Eliz. 330, it was decided that a devise to children of all the lands and goods after payment of debts passed only an estate for life. The same rule of construction was adopted in the case of Canning v. Canning, Mosel. 240, depending on a similar devise. In these, and in most of the cases in which this rule of construction has been adopted, there were no words of limitation, and the question was, what was the true intention of the devisor ; but in the case at bar the intention of the devisor is manifest, an estate for life being given by express words. We can therefore have no doubt that the devisee took only an estate for life, with authority to sell upon the happening of a contingency.
Whether this contingency has happened or not is a ques tian of fact which was properly left to the jury, and their determination is decisive, unless the evidence rejected is by law admissible, or the direction to the jury was wrong. The tenants offered to prove that the executrix or devisee had paid sundry debts of the testator to the amount of £174. 16s. 2d., and their counsel contend, that as no account has been settled in the probate office, and as an account cannot now be settled by reason of the death of the executrix and the lapse of time, this was the best evidence which the nature of the case would allow. Whether a settlement of an account in the probate office is the only evidence to prove the amount of the estate in question, after payment of debts and the expenses of administration, under the circumstances of the case, is a question of some difficulty; and we have not much considered it, because we are of opinion that the evidence, independently of this objection, had no tendency to prove the point in issue, and was therefore properly rejected. It could not prove that the personal property and the income of the real estate were insufficient for the comfortable support of the devisee, unless the *334 amount of the/personal property and of debts due to the estate had been also shown. For aught we know, she might have received payment of debts sufficient for her support. Besides, if she had property in her own right, this also should be taken into consideration, for it cannot be supposed that it was the intention of the testator to provide for her support beyond the life estate, unless in case of need. He first made such a disposition of his property as he thought just and proper, and which, under existing circumstances, we must suppose he deemed adequate to her comfortable support. The authority to dispose of the real estate was superadded, probably in contemplation of the difficulties and wants to which she might be exposed by the vicissitudes of life. It is incumbent, then, on the tenants to show that the power was well executed, and that the contingency on which it depended actually hap pened.,
There being no competent evidence of this fact, we are of opinion that the power was not well executed, the tenant for life having no authority to dispose of the remainder, but on a contingency which has not yet happened. It is, therefore, unnecessary to consider the other objections to the execution of the power.
As to the objection of forfeiture, it is sufficient to remark, that the demandánts do not claim a right of entry arising from forfeiture. If a forfeiture were incurred, the demandants were not bound to enter ; Doe d. Cook v. Danvers, 7 East, 321; Wells v. Prince, 9 Mass. Rep. 508; and if the right to enter for that cause is now barred by the statute of limitations, this does not affect the right of entry arising afterwards on the death of the tenant for life. If there be two rights of entry, one may be lost without impairing the other. Wells v. Prince; Hunt v. Burn, 2 Salk. 422.
But if the case depended on the question of forfeiture, it would be difficult for thé tenants to show any act amounting to a forfeiture. By the common law a bargain and sale could not work a forfeiture or discontinuance of the estate ; it being a general rule, that no alienation which is not made by livery of seisin, or by that which is equivalent, can work a discontinuance. M’Kee v. Pfout, 3 Dallas, 486; Co. Lit. 330 a, note *335 284; Case of Alton Woods, 1 Co. 44; 2 Danv. Abr. 57. There can be no discontinuance without transmutation of the possession. It is true that a bargain and sale, covenant to stand seised, or release, with a general warranty annexed, may produce a discontinuance, when the warranty descends upon him who hath right to the lands. Co. Lit. 329 a; Gilb. Ten. 120. In this case it does not appear that there was any such warranty ; nor would it have descended upon the demandants if there was ; nor is it material to inquire as to these points, because it is clear there was no alienation. The deed to Lucas was never intended so to operate. The possession remained undisturbed jn the grantor, and the estate was immediately reconveyed to Alice Simpson with a special warranty, which would operate so as to defeat the first warranty, if there was one in the deed to Lucas. The whole object of the conveyance and reconveyance was to enable Alice Simpson to raise money by' mortgage. Nor did the mortgage work a discontinuance. The mortgagor remained in possession notwithstanding the mortgage; nor could she have pleaded to a writ of entry that she was not tenant of the freehold. It appears, therefore, that there has been no forfeiture, and if there had been, it would not have barred the demandants’ right of entry after the death of the tenant for life.
The objection, that the action cannot be maintained without proof of an actual ouster, cannot prevail after nul disseisin pleaded in a writ of entry. It was so decided in the case of Higbee et al. v. Rice, 5 Mass. Rep. 352, and we have no doubt of the correctness of that decision.

Judgment according to the verdict.