CITY OF CARONDELET, Appellant, *v.* JOHN SIMON *et al.*, Respondents.

*Limitations — Adverse Possession.* — A party entering into possession of land under claim of title, and exercising the usual acts of ownership over the whole tract described in the deeds under which he claims, for the period prescribed by the statute, thereby defeats the superior title by virtue of his adverse possession.

## Appeal from St. Louis Land Court.

This was an action of ejectment against Simon to recover possession of lots 179, 180 and 181 in the common of Carondelet south of the river Des Pères. Davis appeared as landlord of defendant, and filed an answer denying the title of plaintiff and the unlawful withholding possession of the premises, and set up title in himself by virtue of adverse possession of so much of said lands as were within the Martigny survey.

To show title, plaintiff read 1st, the "Act to incorporate the City of Carondelet," approved January 16, 1860; 2d, U. S. survey of commons of Carondelet; 3d, the subdivision of commons into lots made in 1837. This was the plaintiff's case.

Defendant read in evidence, 1st, the confirmation to J. B. Martigny's legal representatives of a tract of 12×40 arpens, confirmed by act of July 4, 1836; 2d, U. S. survey 3119 of said confirmation; 3d, the incorporation of Carondelet by the county court, August 20, 1832.

It was agreed that on October 8, 1842, James Davis had

acquired title to six-ninths of the Martigny title, and that in 1847 Samuel Forder had acquired three-ninths of the Martigny title and the land included in the survey No. 3119, and that, in a partition between Forder and the heirs of James Davis, the western part of the Martigny claim—which includes the premises sued for—had been set off to Davis.

The defendant then proved a possession of the Martigny tract by James Davis, under his title from 1842; that he died on the tract August 30, 1844, and that since that time his heirs had been in actual possession of the western part of the tract, exercising the usual acts of ownership over the whole tract, and that in 1847 Forder entered upon the eastern part of the tract, enclosing and cultivating it, and that the defendants had no possession outside of the Martigny survey.

At the request of plaintiff, the court instructed the jury to the effect that the plaintiff had the better legal title, and was entitled to recover, unless the defendants had been in the actual adverse possession for the whole period of ten years prior to the commencement of the suit.

Of its own motion, the court gave the following instruction: "If the jury believe from the evidence that the defendants entered into and upon the Martigny claim, and fenced in and actually occupied and cultivated a part thereof for more than ten years before the commencement of this suit, and during the whole of that time exercised such acts of ownership over the whole tract covered by the Martigny survey as would signify an intention to hold the same against every person, then the jury will find for the defendants as to all the land within the Martigny claim."

At request of defendants, the court instructed the jury: "If the jury believe from the evidence that the defendants, and those under whom they claim, have been in possession of so much of the premises sued for as lie within the Martigny survey, claiming title thereto under the deeds and records read in evidence, and that said possession has been

actual, open, and notorious, under said claim, for more than ten years prior to the commencement of this suit, they will find for the defendants."

To which two instructions plaintiff excepted.

*Casselberry*, for appellant.

By an examination of the record, and the plats accompanying the same, it will be seen ⸱, the plaintiff has sued for 120 arpens of land within the co .mon of Carondelet; that the defendants claim under a confirmation of John B. Martigny, by the act of Congress of July 4, 1836. At the conclusion of the survey No. 3119, for John B. Martigny, the Surveyor General expressly says that the whole of the Martigny tract is within the common of Carondelet.

The confirmation to Martigny being twenty-four years younger than the confirmation of the common, the defendants cannot deny the superiority of the title of the plaintiff, who holds under the confirmation of the commons.

It will be seen from the evidence that not exceeding thirty acres at farthest, if that much, was in actual possession ten years next before the time of the commencement of this suit. It is a well established rule of law—

1. That although, as a general principle, a person in actual possession of a part, under written color of title, is deemed in possession of the whole, yet this rule does not apply as against the real owner, who is also in possession of a part, claiming the whole. The only adverse possession as against him, is actual possession. (Cottle v. Snyder, 10 Mo. 764; 4 Serg. & R. 465.)

2. Where there are two tracts of land, and the one interferes with or laps on the other; the statute of limitations has no operation against him who has the best right, unless he who has the inferior right takes an actual, adverse, exclusive possession. (Griffith v. Schwenderman, 27 Mo. 412; Ang. Lim. 432.) In such cases, the rule that possession of part is possession of the whole does not apply.

Ang. on Lim. 425, says—"Occasional exercise of domin-

City of Carondelet v. Simon et al.

ion by broken and unconnected acts of ownership over property which may be permanently productive, is considered as in no respect calculated to assert to the world a claim of right, for such conduct bespeaks rather the fitful invasions of a conscious trespasser than the confident claim of a rightful owner." The second and third instructions were therefore erroneous; there was no evidence on which to base them.

The defendant offered no evidence to define the boundaries of the land; and they allege they were in possession ten years before this suit was brought. In relation to defining the boundaries of the land alleged to have been in possession of the defendant a sufficient time to bar the suit, Ang. on Lim. 416, says—"It is incumbent on the person claiming land by virtue of possession, to show an actual occupation and appropriation of what he so claims within some defined boundaries." (1 Johns. 156; 10 Johns. 477, and the other authorities therein referred to; Ang. Lim. 417.)

In addition to the above, we would further remark, that the survey of the Martigny tract, No. 3119, read in evidence by the defendants, shows that the survey was not recorded and approved by the Surveyor General till March 5, 1858, which is not ten years ago. As the boundaries of the Martigny tract were indefinite, the title attached to no land till the survey was made. (Massey v. Menard's heirs, 8 How. 293; West v. Cochran, 17 How. 403; Stanford v. Taylor, 18 How. 411; Lafayette's heirs v. Kenton et al. 18 How. 197; Carondelet v. St. Louis, 1 Black. 179; Magwire v. Tyler, 1 Black. 195.)

As the title did not attach till 1858, whatever title the defendants may claim remained in the United States until the survey to Martigny in 1858, which is not ten years ago.

*Whittelsey*, for respondents.

I. Where a party enters into possession of lands under deeds which give him a claim of title, his possession will extend to the limits of the tract described by his deeds, unless

the party having the superior title be also in the actual occupation of part of the land belonging to him.

In this case, the plaintiff never had any actual possession of any portion of the premises, or of the commons. (Ang. Lim. §§ 400–402; Johnson v. Prewitt, 33 Mo. 533; Shultz v. Lindell, 30 Mo. 310; Tayon v. Ladew, 33 Mo. 205.) But in this case the court went further, and required the defendants to show the usual acts of ownership and possession over the whole tract, the Martigny survey, and in accordance with § 5 of act of Feb. 2, 1857. The jury have found the fact for the defendants. It was the intent of that section to provide for cases of prescription by parties entering without color of title, so that they might prescribe for land beyond their actual enclosure, which was not necessary when the entry was under color of title. But in this case the defendants entered, under a claim of title, a confirmation by the United States; and their actual occupation of part, claiming title, was an adverse possession of the whole tract, without proof of acts of possession over the whole tract.

II. The plaintiff showed that in 1837 or 1838 the common was divided into lots, some 190 in number. The whole common embraced some ten thousand acres. The possession of some of these lots by tenants of plaintiff could not give the plaintiff presumptive possession of any of the lots sued for as against the actual possession of the defendants. The plaintiff does not bring itself within the rule laid down in Cottle v. Snyder, 10 Mo. 764; the plaintiff had no actual possession.

This is not the case of overlapping claims, in which the presumptive possession of the legal title overcomes the presumptive possession of actual possession of part, under claim to the whole tract described in the deed, but not having actual possession of any part of the lap.

HOLMES, Judge, delivered the opinion of the court.

The plaintiff claimed title to the land in controversy as a part of the common of the town of Carondelet. The defend-

ants claimed title under a confirmation and survey of the Martigny tract, under the act of Congress of the 4th of July, 1836, and gave evidence of an actual adverse possession of the land in controversy for more than ten years next before the commencement of this suit. The evidence appears to have fully established the defence.

The instructions which were given on behalf of the defendants appear to be unobjectionable. The plaintiff's instructions were also given. No instruction was refused. The jury found a verdict for the defendants. The verdict was well supported by both law and evidence. The plaintiff has failed to point out any particular error, and we are at a loss to conjecture on what ground an appeal was taken.

The judgment is affirmed. Judge Wagner concurs; Judge Lovelace absent.

### Opinion of Court on re-hearing.

HOLMES, Judge. A re-hearing was granted in this case, at the last term, in order to allow the appellant an opportunity to be heard. No reason has been shown for changing the opinion heretofore given in the cause; and for the reasons therein stated the judgment will be affirmed. The other judges concur.